1      UNITED STATES DISTRICT COURT
2          DISTRICT OF PUERTO RICO

3   VÍCTOR SANTIAGO-DÍAZ, CARMEN
4   RIVERA-SANTIAGO, and their conjugal
5   partnership,
                                                Civil No. 10-1749 (JAF)
6          Plaintiffs,

7          v.

8   MAGALY RIVERA-RIVERA, MIRNA
9   LÓPEZ, GLORIMAR ANDÚJAR, and
10  MARÍA M. ORTIZ-MOJICA,

11         Defendants.

12

13                        **OPINION AND ORDER**

14         Plaintiffs sue under 42 U.S.C. § 1983 for injunctive relief and damages against

15  Defendants, each sued in her official and personal capacities, claiming political discrimination

16  in violation of the First and Fourteenth Amendments of the U.S. Constitution.[1]  (Docket No. 1.)

17  Plaintiffs also claim relief under Puerto Rico law, specifically Law No. 100, of June 30, 1959

18  ("Law 100"), 29 L.P.R.A. §§ 146–151 (2009), Law No. 184, of August 3, 2004 ("Law 184"),

19  3 L.P.R.A. §§ 1461–1468p (2008); and Puerto Rico's tort provisions ("Article 1802" and

20  "Article 1803"), 31 L.P.R.A. §§ 5162–5163 (1990).  (Id.) Defendants move for dismissal under

21  Federal Rule of Civil Procedure 12(b)(6) (Docket No. 15),[2] and Plaintiffs oppose (Docket

---

[1] Defendants contend that Plaintiffs have attempted, and failed, to plead a claim under 42 U.S.C. §§ 1985–1986.  (Docket No. 15 at 18–20.)  Plaintiffs concede that they pleaded no claim under those sections.  (Docket No. 26 at 31–32.)

[2] Defendants also filed a responsive pleading (Docket No. 23), despite the pendency of their 12(b)(6) motion, citing compliance with our scheduling order (Docket No. 21).  We note for Defendants' convenience that their responsive pleading was not due until after their 12(b)(6) motion

1    No. 26).  Defendants also move to quash summons (Docket No. 25), and Plaintiffs oppose

2    (Docket No. 28).

3                                              **I.**

4                                       **Allegations**

5          At all times relevant to the instant suit, Plaintiff Víctor Santiago-Díaz ("Santiago")

6    worked for the Department of Education of the Commonwealth of Puerto Rico ("DOE").

7    (Docket No. 1.)  Santiago is a member of the Popular Democratic Party ("PDP") and has held

8    various trust and career positions within the Puerto Rico government—including Regional

9    Director, a trust position, for the DOE during the PDP administration.  (Id. at 2.) He also served

10   as mayor of the Municipality of Toa Baja, an elected political office.  (See id.) Defendants each

11   hold an upper-level position within the DOE.  (See id. at 3.)

12         Plaintiffs claim that, following the 2008 general elections in Puerto Rico, Santiago

13   suffered political discrimination at the hands of each Defendant, depriving him of duties and

14   entitlements inherent to his position.  (Docket No. 1.)  At the time of the elections, Santiago

15   held a career position within the DOE, having been relieved of his trust position earlier that

16   year.  (See id. at 3.)  Plaintiffs claim discrimination beginning seven months later, when

17   Defendant María M. Ortiz ("Ortiz") acted on several occasions in a way that "humiliated"

18   Santiago and undermined his effectiveness in his position.  (Id. at 3–4.)  Plaintiffs claim that

19   Santiago was also reassigned to a unit to perform "duties that were not commensurate with his

20   position"—and that the duties he should have had were instead assigned to a member of the

21   New Progressive Party ("NPP").  (See id. at 4.)  Shortly thereafter, Santiago wrote to Ortiz and

---

was resolved.  See Fed. R. Civ. P. 12(a)(4)(A).

1    to the other three Defendants, complaining of the "humiliation and removal of functions." (Id.)

2    Later that month, Defendant Magaly Rivera-Rivera ("Rivera") stripped Santiago of duties that

3    were reassigned to "NPP Sympathizers." (Id. at 5.)  Plaintiffs also claim that Rivera acted on

4    several occasions in a way that undermined Santiago's authority in the eyes of his staff.  (Id.)

5    They claim that Defendant Mirna López was aware of and approved these removals of duties.

6    They also claim that Rivera "empowered both [Ortiz] and Glorimar Andujar to humiliate

7    [Santiago] and permit the taking of his functions to be given to NPP sympathizers." (Id.)

## II.

## Motion to Quash

10    Defendants claim they received insufficient service of process—alleging that the service

11    did not conform with Federal Rule of Civil Procedure 4—and therefore challenge the court's

12    personal jurisdiction over them.  (Docket No. 25.)  The defense of insufficient service of

13    process is properly made via a motion under Rule 12(b)(5) or, in the absence of a Rule 12(b)

14    motion, via a responsive pleading.  See Fed. R. Civ. P. 12(b).  But, subject to exceptions that

15    do not apply here, "a party that makes a motion under [Rule 12] must not make another motion

16    under [Rule 12] raising a defense or objection that was available to the party but omitted from

17    its earlier motion."  Fed. R. Civ. P. 12(g)(2).  Summons for all Defendants were returned

18    executed on or before November 18, 2010.  (See Docket Nos. 8; 9.)  Defendants filed their Rule

19    12(b)(6) motion on January 18, 2011, and they did not therein raise the defense of insufficient

20    service of process.  (Docket No. 15.)  We, therefore, find that they waived their defense of

21    insufficient service of process.  See Fed. R. Civ. P. 12(h)(1)(A) ("A party waives any defense

Civil No. 10-1749 (JAF)                                                                    -4-

1    listed in Rule 12(b)(2)–(5) by omitting it from a motion in the circumstances described in Rule

2    12(g)(2) . . . .").

3                                              **III.**

4                          **Motion to Dismiss Under 12(b)(6)**

5    **A.    Standard**

6            A defendant may move to dismiss an action, based solely on the complaint, for the

7    plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

8    In assessing such a motion, we "accept[] all well-pleaded facts as true, and we draw all

9    reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar Found., 993

10   F.2d 962, 971 (1st Cir. 1993).

11           "[A]n adequate complaint must provide fair notice to the defendants and state a facially

12   plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

13   In considering a complaint's adequacy, we disregard "statements in the complaint that merely

14   offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of

15   action." Id. (internal quotation marks omitted).   We then take as true what remains,

16   "[n]onconclusory factual allegations . . . even if seemingly incredible." Id.  On the basis of

17   those properly pled facts, we assess the "reasonableness of the inference of liability that the

18   plaintiff is asking the court to draw." Id. at 13.

19   **B.    Analysis**

20           We consider Plaintiffs' federal claim before turning to their claims under Puerto Rico

21   law.

1.    **Section 1983**

Defendants argue that Plaintiffs have failed to state a prima-facie case under § 1983 and that Defendants are in any case entitled to immunity from the claims.  We examine each argument in turn.

a.    **Prima-Facie Case**

"Section 1983 provides a private right of action against state actors—that is, public officials acting under color of state law—who deprive individuals of rights confirmed by federal constitutional or statutory law."  Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999).

Defendants argue that Plaintiffs fail to state a claim under § 1983 because they (1) allege neither the direct involvement of any of the four Defendants nor a causal connection between their actions and the violations alleged; and (2) state no deprivation of rights under the First or Fourteenth Amendments.  Defendants also argue that, regardless, Plaintiff Carmen Rivera-Santiago has no standing to sue under § 1983 because the complaint alleges violations of rights personal to Santiago.

i.    **Involvement and Causal Connection**

A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an affirmative act which he is legally required to do, that causes the deprivation of which complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability.  Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable.  The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

Springer v. Seaman, 821 F.2d 871, 879 (1st Cir. 1987) (citations omitted).

1          As to involvement, Defendants argue that "Plaintiffs have failed to make any allegations

2     as to the direct personal or individual participation and or omission of appearing codefendants."

3     (Docket No. 15 at 7–8; see also id. at 14–15.)  We disagree.  As we discussed in Part I, the

4     complaint alleges that Ortiz and Rivera acted directly on various occasions to undermine

5     Santiago, including when Rivera stripped Santiago of his duties.  The complaint also alleges that

6     Santiago wrote to each of the four Defendants, upper-level employees of the DOE, complaining

7     of those deprivations.  From that writing, we may reasonably infer that each Defendant was in

8     some way responsible for responding to the conduct of which Santiago complained.  Specifics

9     as to whether, how, and to what extent each Defendant was involved in depriving Santiago of

10    his rights need not be clear from the complaint.  At this stage, we look for plausibility that each

11    was involved, either through action or negligent omission, in that deprivation.  We find that

12    Plaintiffs have sufficiently alleged that each Defendant was involved in the violations they

13    claim.

14         As to causation, Defendants base their argument on their claim that Plaintiffs averred that

15    Santiago's transfer to a new position was "a result of changes made by Law 7." (Docket No. 15

16    at 8.)  They argue that Plaintiffs, therefore, allege no proximate causation between Defendants'

17    conduct and the alleged adverse employment action.  (Id.)  We note two problems with this

18    argument.  First, Defendants misconstrue Plaintiffs' language.  The complaint states that

19    "Santiago [r]eceived a letter . . . notifying him that as a result of the changes made by Law 7,

20    he was transferred." (Docket No. 1 at 4.)  Plaintiffs there are describing the reason set forth by

21    Santiago's employer for the transfer, not conceding the veracity of that reason; within the

22    context of the complaint, Plaintiffs clearly find suspect the motivation behind the transfer.

1    Second, Defendants ignore the remainder of the adverse employment actions set forth in the

2    complaint.[3]   We, therefore, find unpersuasive Defendants' argument as to the pleading of

3    causation.

4                                    ii.      **Constitutional Violations**

5           Plaintiffs claim political discrimination in violation of the First Amendment and

6    violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

7    (Docket No. 1 at 2, 6–7.) Defendants argue that Plaintiffs have failed to state a prima facie case

8    of political discrimination under the First Amendment and that their Fourteenth Amendment

9    claims fail, as the alleged discrimination should be analyzed exclusively under the First

10   Amendment.  For the reasons set forth below, we disagree with Defendants' argument as to the

11   First Amendment but agree with their argument as to the Fourteenth.

12                                    A.      **First Amendment**

13          "An actionable claim of political discrimination consists of four elements: '(1) that the

14   plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of

15   the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political

16   affiliation was a substantial or motivating factor for the adverse employment action.'"

17   Ocasio-Hernández, 640 F.3d at 13 (quoting Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239

18   (1st Cir. 2010)).  Defendants argue that Plaintiffs have failed to plead elements (2) and

19   (4)—knowledge and causation.  (Docket No. 15 at 8–16.)

---

[3] We find this omission fatal where Defendants make no argument that the remainder of the alleged employment actions, in whole or in part, do not constitute "adverse employment actions" within the meaning of the alleged constitutional violation.  (See Docket No. 15.)

1    As to knowledge, Defendants recount allegations regarding their knowledge of

2    Santiago's political affiliation and argue that we must disregard them as "conclusory and naked

3    assertions." (Id. at 9–11.) We disagree.  We may reasonably infer that Defendants, upper-level

4    employees of the DOE, were aware of Santiago's political affiliation because Santiago had been

5    mayor of the Municipality of Toa Baja and had recently held a trust position for the PDP

6    administration, as regional director within the DOE.  See supra Part I.

7    As to causation, Defendants argue that Plaintiffs rely merely on the fact that the

8    administration changed parties during the 2008 general election. (Docket No. 15 at 13.) Again

9    we disagree.  We may reasonably infer that Santiago's political affiliation motivated

10   Defendants' adverse actions, given that these followed the change in administration and that the

11   duties of which Santiago was stripped were reassigned to members of the NPP.  See supra

12   Part I.

13                              **B.      Fourteenth Amendment**

14   Defendants argue that Plaintiffs cannot sustain a claim under the Due Process or Equal

15   Protection Clauses of the Fourteenth Amendment because their claims are properly analyzed

16   under the First Amendment. (Docket No. 15 at 16–17.)  Plaintiffs fail to address that argument

17   in their response.  (See Docket No. 26 at 29–30.)  In Pagán v. Calderón, the First Circuit

18   explained that "[i]t is the First Amendment, not the Fourteenth Amendment, that guards

19   individuals against state-sponsored acts of political discrimination."  448 F.3d 16, 33–34 (1st

20   Cir. 2006); see also id. at 34 (stating specifically that allegations of political discrimination

21   cannot serve as a basis for a substantive due process claim); id. at 36 (stating the same as to the

22   Equal Protection Clause).  The court also clarified that this rule "depends only on whether a

Civil No. 10-1749 (JAF)                                                                    -9-

1    specific constitutional provision addresses the type of conduct at issue," and not on whether the

2    plaintiff will be successful under that provision.  Id. at 34.  Because Plaintiffs base their federal

3    claim only on the allegation that Santiago was "discriminatorily treated because of his political

4    affliation" (Docket No. 1 at 6), we find that Plaintiffs' claims should be analyzed exclusively

5    under the First Amendment and that therefore they state no claim for relief under the Fourteenth

6    Amendment.

7                                    iii.    **Spousal Standing**

8           Defendants argue that Santiago's wife, Plaintiff Carmen Rivera-Santiago ("Rivera-

9    Santiago"), has no standing to pursue a § 1983 claim because the constitutional violations

10   alleged are specific to Santiago.[4]  (Docket No. 15 at 27–30.)  We agree.  Section 1983 claims

11   must allege a deprivation of the plaintiff's personal rights.  See, e.g., Ramirez–De Leon v.

12   Mujica-Cotto, 345 F. Supp. 2d 174, 181 (D.P.R. 2004) (citing Judge v. City of Lowell, 160 F.3d

13   67, 76 n.15 (1st Cir. 1998), overruled on other grounds by Educadores Puertorriqueños en

14   Acción v. Hernández, 367 F.3d 61 (1st Cir. 2004)).  A plaintiff has no standing under § 1983

15   to pursue vindication of another's rights.  Id.  The complaint alleges deprivations of Santiago's

16   rights but does not present any separate allegations regarding Rivera-Santiago's.  (See, e.g.,

17   Docket No. 1 at 6.)  We, therefore, find that Rivera-Santiago has failed to state a claim of

18   personal deprivation under § 1983 and has no standing under that section to pursue vindication

19   of Santiago's rights.

---

[4] Plaintiffs verge on conceding the point; the only reference they make to it in their response is that "[Rivera-Santiago], while being questioned her standing to sue under section 1983, certainly has legitimate standing under the laws and Constitutions [sic] of the Commonwealth of Puerto Rico." (Docket No. 26 at 31.)

1      **b.    Immunities**

2      Defendants claim that they are entitled to Eleventh Amendment immunity from

3      Plaintiffs' claims against them in their official capacities (Docket No. 15 at 23–27) and to

4      qualified immunity from any remaining § 1983 claim (id. at 20–23).  We examine each

5      contention in turn.

6      **i.     Eleventh Amendment**

7      The parties agree on two points: (1) the Eleventh Amendment bars the recovery of

8      damages from Defendants in their official capacities (see Docket Nos. 15 at 24–26; 26 at 8); and

9      (2) the Eleventh Amendment does not bar claims for injunctive relief, grounded in federal law,

10     against Defendants in their official capacities (see Docket Nos. 15 at 26; 26 at 8).  We concur.

11     See, e.g., Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 477–78 (1st Cir. 2009)

12     (recognizing that state officers in their official capacities may be sued for equitable but not

13     monetary relief).  Plaintiffs may pursue injunctive relief, but not damages, under § 1983 against

14     Defendants in their official capacities.

15     Defendants also argue that the Eleventh Amendment bars Plaintiffs' claims grounded in

16     Puerto Rico law for injunctive relief.  (Docket No. 15 at 26–27.)  Plaintiffs do not address that

17     argument in their response.  (See Docket No. 26 at 8.)  The First Circuit has stated that the

18     Eleventh Amendment bars "injunctive relief against state officials for violation of state law."

19     Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 42–43 (1st Cir. 2006).  We, therefore, find that

1    Plaintiffs' claim for injunctive relief grounded in Puerto Rico law against Defendants in their

2    official capacities is barred by the Eleventh Amendment.[5]

3                    **ii.    Qualified Immunity**

4            Defendants argue that qualified immunity bars Plaintiffs' suit for damages against them

5    in their personal capacities. (Docket No. 15 at 20–23.)  In determining whether a defendant is

6    entitled to qualified immunity, the court asks "(1) whether the facts alleged or shown by the

7    plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was

8    'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes,

9    568 F.3d 263, 269 (1st Cir. 2009).  An affirmative answer to the second inquiry requires both

10   that the contours of the right be sufficiently clear to a reasonable official and that that official

11   would understand the conduct alleged to be a violation of that right.  Id.

12           Defendants argue that Plaintiffs have failed to allege a violation of a constitutional rights.

13   They argue specifically that: (1) "[t]aking as true . . . [P]laintiffs' allegations against appearing

14   defendants, Santiago was transferred as a result of the changes made by Law 7"; and (2) the

15   specific actions alleged—"inquiring about absences, demanding documents, calling [Santiago]

16   for last minute meetings, and reassigning duties"—do not amount to a constitutional violation.[6]

17   (Docket No. 15 at 23.)  As to (1), we have already explained that this argument misconstrues

18   Plaintiffs' language, and we reject it.  See supra Part III.B.1.a.i.  Argument (2) suffers from the

19   omission of other actions alleged, including Santiago's transfer, which, if motivated as alleged

---

[5] Defendants make no specific argument regarding injunctive relief under Puerto Rico law against them in their personal capacities (Docket No. 15 at 26–27), so we decline to consider that here.

[6] Defendants also claim perfunctorily that some of the actions are time barred.  (Docket No. 15 at 15.)  As they do not develop that argument, we decline to consider it.

Civil No. 10-1749 (JAF)                                                     -12-

by Santiago's political affiliation, would constitute a clear violation of his clearly established First Amendment right to be free from political discrimination.  See, e.g., Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 (1st Cir. 2010) (stating that transfers can constitute adverse employment action, as can any action resulting in a "work situation unreasonably inferior to the norm for the position" (internal quotation marks omitted)).  We, therefore, reject Defendants' arguments that they are entitled to qualified immunity.

### 2.   Puerto Rico Claims

Defendants argue that Plaintiffs' claims under Law 100 and under Article 1802 must be dismissed.[7]  (Docket No. 15 at 31–33.)  We examine each argument in turn.

### a.   Law 100

Defendants argue Plaintiffs cannot recover under Law 100; in their official capacities, Defendants represent a public agency acting as such—which is immune from suit under Law 100—and in their personal capacities, Defendants are not Santiago's "employer" within the meaning of the term under Law 100.  (Docket No. 15 at 31–33.)  Plaintiffs do not address this argument in their response.  (See Docket No. 26.)  We agree that Plaintiffs may not recover under Law 100 against Defendants in their official capacities.  See 29 L.P.R.A. § 151(2); Rodriguez-Narvaez v. Pereira, 552 F. Supp. 2d 211, 217 (D.P.R. 2007).  We disagree, however,

---

[7] Defendants also argue that (1) under 28 U.S.C. § 1367, we should not exercise supplemental jurisdiction over Plaintiffs' Puerto Rico claims, as Plaintiffs have failed to state a federal claim; and (2) Plaintiffs' claims under the Puerto Rico Constitution must be dismissed given Plaintiffs' failure to allege a prima-facie case of political discrimination.  (Docket No. 15 at 30–32.)  Given our analysis above in Part III.B.1, we reject both arguments summarily.  Defendants make no argument regarding pendant party jurisdiction over Rivera-Santiago's claims and we, therefore, decline to consider the issue here.

Civil No. 10-1749 (JAF)                                                                    -13-

1    that Plaintiffs cannot recover under Law 100 against Defendants in their personal capacities.[8]

2    The Supreme Court of Puerto Rico has held that any individual responsible for employment

3    discrimination on the basis of political affiliation is liable under Law 100.  See id. at 218 (citing

4    Rosario Toledo v. Distribuidora Kikuet, Inc., 153 P.R. Dec. 125 (2000)).  The court made no

5    exception for employees of a government agency who are sued in their personal capacities.  See

6    id.; see also Cintron-Lorenzo v. Fondo del Seguro del Estado, No. 07-1616 (ADC/CVR), 2009

7    WL 1230568, at *4 (D.P.R. May 1, 2009).

8                    **b.      Article 1802**

9             Finally, Defendants argue that Plaintiffs cannot recover under Article 1802 because a

10   more specific provision, Law 100, covers the conduct alleged.  (Docket No. 15 at 31.)  Plaintiffs

11   do not address this argument in their response.  (See Docket No. 26.)  Adopting this court's

12   reasoning in Reyes-Ortiz v. McConnell Valdes, we find that because Santiago bases his claims

13   for relief solely upon political discrimination in violation of Law 100, he cannot recover under

14   Article 1802.  See 714 F. Supp. 2d 234, 239 (D.P.R. 2010) (citing Santini Rivera v. Serv Air,

15   Inc., 137 P.R. Dec. 1, 5 n.3, 16 (1994)).  Nevertheless, this rule does not bar Rivera-Santiago

16   from pursuing any derivative claims under Article 1802.  See Gonzalez-Figueroa v. J.C. Penney

17   P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009) (citing Santini Rivera, 137 P.R. Dec. at 14).

---

[8] Defendants have not argued for a distinction between the Plaintiffs as to their ability to recover under Law 100 (see Docket No. 15 at 31–33), so we decline to consider any such distinction here.

Civil No. 10-1749 (JAF)                                                        -14-

**IV.**

**Conclusion**

Given the foregoing, we hereby **DENY** Defendants' motion to quash (Docket No. 25) and **GRANT IN PART** their Rule 12(b)(6) motion (Docket No. 15).  We **DISMISS** Plaintiffs' claims under the Fourteenth Amendment of the U.S. Constitution; Rivera-Santiago's claims under § 1983; and Santiago's claims under Article 1802. **PENDING RESOLUTION** are Santiago's claims under § 1983; Plaintiffs' claims under Laws 100 and 184 and Article 1803; and Rivera-Santiago's claims under Article 1802.  **NO PLAINTIFF MAY RECOVER** damages under § 1983, injunctive relief under Puerto Rico law, or any relief under Law 100 against Defendants in their official capacities.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 14th day of July, 2011.

                                       s/José Antonio Fusté
                                       JOSE ANTONIO FUSTE
                                       U.S. District Judge