1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO
3
4

VICTOR SANTIAGO-DÍAZ, et. al.,

    Plaintiff,                Civil No. 10-1749 (JAF)

    v.

MAGALY RIVERA RIVERA, et. al.,

    Defendants.

5
6    **OPINION AND ORDER**

7        We must decide whether an employee's evidence of discrimination is sufficient to

8    withstand his employer's motion for summary judgment in this employment

9    discrimination case.

10    **I.**
11
12    **Background**
13
14        Because we must view all facts in the light most favorable to the non-moving

15    party when considering a summary judgment motion, to the extent that any facts are

16    disputed, the facts set forth below represent Plaintiffs' version of the events at issue.

17    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

18        Víctor Santiago-Díaz worked for the Department of Education of the

19    Commonwealth of Puerto Rico.  (Docket No. 1.)  Santiago-Díaz is a member of the

20    Popular Democratic Party ("PDP") and has held various trust and career positions within

21    the Puerto Rico government—including Regional Director, a DOE trust position, during

22    the last PDP administration.  (Id. at 2.)  He also served as mayor of the Municipality of

1    Toa Baja, an elected political office.  (Id.)  Defendants each hold an upper-level position

2    within the DOE.  (Id. at 3.)

3            Santiago-Díaz claims that, following the 2008 general elections in Puerto Rico, he

4    suffered political discrimination at the hands of each Defendant, depriving him of duties

5    and entitlements inherent to his position.  (Id.)  At the time of the elections, Santiago-

6    Díaz held a career position within the DOE, having been relieved of his trust position

7    earlier that year.  (Id.)  Plaintiff claims the discrimination began seven months later, when

8    Defendant María Mojica-Ortiz "humiliated" Santiago-Díaz on several occasions and

9    undermined his effectiveness in his position.  (Id. at 3–4.)   Plaintiff claims that

10   Defendants then reassigned him to a unit to perform "duties that were not commensurate

11   with his position"—and that the duties he should have had were instead assigned to a

12   contract employee and member of the New Progressive Party ("NPP").  (Id. at 4.)

13   Santiago-Díaz claims that Defendant Mirna López was aware of and approved his

14   reassignment and the removal of his duties.  Santiago-Díaz also claims that Rivera-Rivera

15   "empowered both [Ortiz] and Glorimar Andujar to humiliate [Santiago] and permit the

16   taking of his functions to be given to NPP sympathizers." (Id.)

17           On August 2, 2010, Plaintiffs' filed the initial complaint.  (Docket No. 1.)   On

18   January 18, 2011, Defendants moved to dismiss the complaint.  (Docket No. 15.)   On

19   August 15, 2011, we denied Defendants' motion to quash and we granted a partial

20   judgment dismissing Santiago-Díaz' claims under the Fourteenth Amendment, with

21   prejudice. (Docket No. 37.)  Defendants filed a motion for summary judgment on May 5,

22   2012.  (Docket No. 56.)  On June 21, 2012, Plaintiffs filed a response in opposition to the

23   motion for summary judgment.  (Docket No. 63.)  Defendants replied on July 16, 2012.

24   (Docket No. 80.)

## II.

### Legal Standard

The defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). We must decide whether a reasonable juror could find for plaintiffs on each of their claims when all reasonable inferences from the evidence are drawn in their favor. See Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.

### Discussion

Section 1983 creates a cause of action against those who, acting under color of state law, violate a plaintiff's constitutional or federal rights. See 42 U.S.C. § 1983; Maine v. Thiboutot, 448 U.S. 1, 4(1980).

Here, Santiago-Diaz claims that his First Amendment rights were violated by Defendants when he was reassigned from his employment with the Department of Education on account of his political affiliation. These claims lack merit.

**A.    Defendant Ortiz-Mojica is Entitled to Summary Judgment on Plaintiffs' Claim of Political Discrimination**

Government employees who do not occupy policy-making positions of trust and confidence are protected against adverse employment actions based on their political affiliation. Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006). To establish a political discrimination case, Santiago-Díaz must allege sufficient facts from which we can find that his political affiliation was a substantial or motivating factor behind the

Civil No. 10-1749 (JAF)                                                -4-

1    challenged employment action.   See Gonzalez-De-Blasini v. Family Department, 377

2    F.3d 81, 85 (1st Cir. 2004).

3          A *prima-facie* case of political discrimination requires that Santiago-Díaz properly

4    show that: (1) he and Defendant belong to opposing political affiliations; (2) Defendant

5    has knowledge of Plaintiff's political affiliation; (3) a challenged employment action

6    occurred; and (4) Plaintiff's political affiliation was a substantial or motivating factor

7    behind the challenged employment action.   Welch v. Ciampa, 542 F.3d 927, 938–39 (1st

8    Cir.2008) (stating that the plaintiff must show the defendant has knowledge of her

9    political affiliation to establish a *prima-facie* case of political discrimination (quoting

10   Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 39 (1st Cir.2007)).

11         It is clear from the record that Santiago-Díaz and Ortiz-Mojica are both members

12   of the Popular Democratic Party.   (Docket Nos. 1 at 2 and 61-3.)   As such, Santiago-Díaz

13   fails to show a *prima-facie* case of political discrimination against Ortiz-Mojica, since

14   both belong to the same political affiliation.

15   **B.     Defendants López and Andújar are Entitled to Summary Judgment on**
16   **         Plaintiffs' Claim of Political Discrimination**
17
18         Section 1983 does not impose liability on the basis of *respondeat superior*.   Rizzo

19   v. Goode, 423 U.S. 362, 375-77 (1976); Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484,

20   502 (1st Cir. 2011) (supervisory officials cannot be held liable for the conduct of their

21   subordinates solely under a theory of *respondeat superior*); see also Martinez-Velez v.

22   Rey-Hernandez, 506 F.3d 32, 41 (1st Cir. 2007) ("Only persons who were directly

23   involved in the wrongdoing may be held liable.") (citation omitted).   Under Section 1983,

1  supervisory liability is limited to those circumstances where a supervisor's conduct

2  constitutes "encouragement, condonation or acquiescence or gross negligence …

3  amounting to deliberate indifference." Grajales v. Puerto Rico Ports Authority, 682 F.3d

4  40, 47 (1st Cir. 2012) (citation omitted).

5        The parties agree that Ortiz-Mojica is Santiago-Díaz' direct supervisor and that, in

6  this matter, López and Andújar were limited to their official roles as associate secretaries

7  of education in the Puerto Rico Department of Education.  (Docket No. 20 at 10; 21 at 7.)

8  Their official involvement did not constitute "encouragement, condonation or

9  acquiescence or gross negligence … amounting to deliberate indifference." Grajales, 682

10  at 47.  Santiago-Díaz offers no evidence that López and Andújar influenced the decision

11  to reassign him in any way.  Santiago-Díaz alleges that he wrote letters regarding his

12  reassignment and copied López and Andújar on the correspondence—but he concedes

13  that he never wrote directly to either López or Andújar.  (Docket No. 63 at 12.)

14  According to Santiago-Díaz, López and Andújar were "deliberately indifferent to the

15  adverse employment actions" taken against him.  Id.  But, this is not enough to sustain

16  employment action: Copying López and Andújar on his correspondence does not show

17  that they participated in the action.  Because Santiago-Díaz' claims against López and

18  Andújar fail to state a claim of supervisory liability under Section 1983, they are

19  dismissed.

**C.    Defendant Rivera-Rivera is Entitled to Summary Judgment on Plaintiffs' Claim of Political Discrimination**

While the record indicates that Rivera-Rivera is a member of an opposing political affiliation and she gave her approval for Santiago-Díaz' reassignment, (Docket Nos. 87-9 at 2; 61-5; 61-8), we dismiss Santiago-Díaz' claims against Rivera-Rivera because Defendants have shown that Santiago-Díaz would have been reassigned anyway, regardless of political considerations. Mt. Healthy, 429 U.S. at 287; See also Guilloty-Pérez v. Pierluisi, 339 F.3d 43, 56 (1st Cir. 2003) (even assuming that the defendant's actions were motivated in part by the plaintiff's conduct, defendant can still prevail if he can show that the protected conduct was not the 'but-for' cause of the adverse action). Defendants provided evidence showing that the implementation of Law 7 would have required Santiago-Díaz' reassignment because he had the professional abilities to fill a supervisory vacancy. (Docket No. 55 at 4.)

On March 9, 2009, Governor Luis Fortuño-Burset signed the "Special Act Declaring a State of Fiscal Emergency and Establishing a Comprehensive Fiscal Stabilization Plan to Salvage the Credit of Puerto Rico," 3 L.P.R.A. § § 8791–8810 (2009) [hereinafter, "Law 7"], which empowered government agencies to dismiss thousands of government employees. From the outset, Defendant Ortiz-Mojica made clear with Santiago-Díaz that he was being reassigned because of the effects of Law 7. (Docket Nos. 55 at 4-5; 61 at 5.) According to Defendants, in implementing Law 7, the Center terminated the employment of sixteen staff members. (Id.) Additionally, the

Civil No. 10-1749 (JAF)                                                                         -7-

1  former supervisor of the academic area had been assigned to serve as director of a

2  school—further necessitating Santiago-Díaz' transfer.  (Id.)

3          Santiago-Díaz gives no evidence in response to show that Law 7 and staff

4  shortages would not have necessitated his transfer.   Instead, he asserts that the

5  Defendants reassigned him to "accommodate in the programmatic area an affiliate of the

6  PNP Party."  (Docket No. 64 at 4.)  To the contrary, Defendants' evidence shows that the

7  contract worker hired to assist the center did not occupy Santiago-Díaz' previous

8  position.  (Docket No. 55 at 10.)  The Center hired the contract employee, Beda Orsini, to

9  work in the programmatic area handling referrals.   The one witness Santiago-Díaz called

10  stated under oath that Orsini was not a supervisor of the programmatic area and that

11  Orsini only worked in handling referrals.   (Docket No. 55 at 11-2.)   Indeed, in some

12  Center documents Orsini is referred to as "secretarial staff."  (Docket No. 61-12 at 1.)

13  Moreover, Defendants have introduced several letters Santiago-Díaz sent to Orsini where

14  he gives Orsini supervisory instructions.  (Docket No. 61-11.)

15          To the extent Santiago-Díaz has any other facts supporting his contention that

16  Orsini was hired as his replacement, he has not brought those facts to our attention.

17  Local Rules 56(c) and (e), require the nonmoving party to submit a "separate, short, and

18  concise statement of material facts [that] shall admit, deny or qualify the facts supporting

19  the motion for summary judgment .... [they] shall support each denial or qualification by

20  a record citation as required by this rule."  D.P.R. R. 56(c).  The rules warn "parties

21  opposing summary judgment that, to preclude judgment as a matter of law, they must

22  identify factual issues buttressed by record citations."  See Morales v. A.C. Orssleff's

1   EFTF, 246 F. 3d 2001 (1st Cir. 2001).   The First Circuit Court of Appeals has

2   consistently stated that "the district court in Puerto Rico is justified in holding one party's

3   submitted uncontested facts to be admitted when the other party fails to file oppositions

4   in compliance with local rules."   See, e.g., Fontanez-Nuñez, et al. v. Janssen Ortho LLC,

5   et al, 447 F.3d 50 (1st Cir. 2006).   Santiago-Díaz' other denials and qualifications relating

6   to this issue lack proper record citations as required by Local Rule 56(e), which requires

7   inclusion of a "specific page or paragraph of identified record material supporting the

8   assertion." D.P.R.R. 56(e).   Unsupported assertions are not sufficient to establish a

9   disputed material fact and avoid summary judgment.   Thus, Santiago-Díaz' claims fail

10  because Defendants have shown that he would have been reassigned notwithstanding the

11  alleged political considerations.

12  **D.      Plaintiffs' Commonwealth Claims**

13          Santiago-Díaz alleges violations of rights afforded by the Puerto Rico Civil Code.

14  (Docket No. 1 at 7.)   Specifically, Santiago-Díaz alleges violations of Articles 1802 and

15  1803 of the Puerto Rico Civil Code and violations of Act 100.   (Id.)   The complaint does

16  not make clear what action constitutes the basis for these violations.   In the response in

17  opposition to the motion for summary judgment, Santiago-Díaz offers no further

18  argumentation, other than to reassert that Defendants' conduct constituted a violation

19  under Article 1802 of the Puerto Rico Civil Code.   (Docket No. 63 at 23.)   Beyond this, it

20  is not entirely clear what is being alleged insofar as violations of Puerto Rico laws are

21  concerned.   Defendants argue that Santiago-Díaz has failed to state a claim under Articles

22  1802 and 1803 and Law 100, and ask that we dismiss the claim with prejudice.   (Docket

23  No. 56 at 21-4.)

We have discretion to decline supplemental jurisdiction over the remaining Commonwealth law claims since we have dismissed all of the claims over which we have original jurisdiction.  See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal law claims are dismissed before trial…the state claims should be dismissed as well).  In exercising our discretion under § 1367(c), we must consider the issues of "judicial economy, convenience, fairness, and comity."  Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003).  Having considered these factors, we decline to exercise supplemental jurisdiction over Plaintiffs' Commonwealth law claims.   Therefore, we dismiss without prejudice Santiago-Díaz' remaining Commonwealth law claims.

**IV.**

**<u>Conclusion</u>**

For the foregoing reasons, Defendants' summary judgment motion is **GRANTED.** Plaintiffs' federal law claims are **DISMISSED WITH PREJUDICE**. Plaintiffs' Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 7th day of August, 2013.

<u>S/José Antonio Fusté</u>
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE